UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LEON J. SINGLETON, | ) |
| Plaintiff, | ) |
| v. | ) Case No.  15-cv-1503 |
| EAST PEORIA POLICE DEPARTMENT, JEFFREY A. BIEBER, MATTHEW BOLTON, and PATRICK PATTERSON | ) |
| Defendants. | ) |

## O R D E R  &  O P I N I O N

Plaintiff Leon J. Singleton has filed a Complaint against the East Peoria Police Department and three of its officers, and alleges that Defendants violated his civil rights in violation of 42 U.S.C. § 1983. This matter is before the Court on Plaintiff's Motion for Leave to Proceed in forma pauperis (Doc. 2) and Motion to Request Counsel (Doc. 3). For the reasons discussed below, Plaintiff's motions are both denied. Further, Plaintiff's Complaint is dismissed pursuant to 28 U.S.C. § 1915, as Plaintiff has failed to state any claims on which the Court can grant relief. Plaintiff may file with the Court an amended complaint within twenty-eight (28) days. If he does so, he may also file updated motions to proceed in forma pauperis and for appointed counsel.

### BACKGROUND

Plaintiff manages the kitchen at the Sunnyland 1 Stop, a bar in East Peoria, Illinois. (Doc. 1 at 7). He worked late on October 31, 2015, as the bar was hosting a

band. (*Id.*). At around 11:30 that evening, he took a smoking break, and noticed that a police car was parked in the bar's parking lot. (*Id.*). Shortly thereafter – at around midnight on November 1, 2015 – the band stopped playing, packed up its equipment, and left. The police car left the parking lot just before the band did. (*Id.* at 7-8).

Plaintiff left work in his car shortly after that to return to his home in Peoria. A different police officer, at the request of the original police officer, then began following Plaintiff. That officer pulled Plaintiff over on westbound Interstate 74, just before Plaintiff was about to exit. (*Id.* at 8). Plaintiff had been following all traffic rules before he was pulled over. (*Id.*).

After pulling him over, the officer asked Plaintiff why he was in front of the Sunnyland 1 Stop, and Plaintiff explained that he worked there. (*Id.* at 8). The officer then processed Plaintiff's license and registration, returned, and asked Plaintiff to step outside of the car. (*Id.*). He then began assessing Plaintiff's sobriety. First, he gave Plaintiff a vision test. Then he administered a breathalyzer test, to which Plaintiff consented and blew a .077. Finally, he asked Plaintiff to walk a line. (*Id.*). Plaintiff declined, and told the officer that he could not because of a bad right knee and certain medications he had taken. (*Id.*). The officer then arrested him for driving under the influence, and told him it was "because [he] indicated [he] had prescription drugs." (*Id.*). The officer also told Plaintiff that he had probable cause for the stop because Plaintiff was "all over the off ramp." (*Id.*).

At the police station, the arresting officer repeatedly questioned Plaintiff about drug activity at the bar, and asked him whether he knew certain individuals.

(*Id.* at 9). In response to Plaintiff's challenge, the officer again said that he had probable cause to arrest Plaintiff, who "was all over the bridge." (*Id.*). When Plaintiff suggested that the officer had racially profiled him, the officer laughed and explained that he had followed Plaintiff because his colleague – a Black officer – had asked him to "keep an eye" on a suspicious Jaguar that was parked in the bar's parking lot. (*Id.*).

Ultimately, Plaintiff received three citations, and was released. The first ticket was for DUI, the second was for improper lane usage, and the third was for illegal transportation of alcohol. (*Id.*). Plaintiff explains that he had a cup in his car that had a small amount of alcohol in it. (*Id.*).

Plaintiff formally complained of racial profiling early the next week. (*Id.* at 10-11). He also filed an "Appeal Form," although it is unclear from the Complaint what he is appealing. (*Id.* at 11). The criminal proceedings related to his citations are ongoing. (*Id.* at 5).

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(a)(1), "any court of the United States may authorize the commencement . . . of any suit, action or proceeding . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets . . . ." The same section instructs that courts "shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." *Id.* § 1915(e)(2)(B)(ii).

Dismissals pursuant to § 1915(e)(2)(B)(ii) are treated in the same manner as dismissals under Federal Rule of Civil Procedure 12(b)(6). *Arnett v. Webster*, 658

F.3d 742, 751 (7th Cir. 2011). Therefore, the court must take "all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff." *Id.*

A plaintiff's complaint must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts "to present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. Pro se complaints are to be liberally construed and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007)(per curiam).

## DISCUSSION

As it must, the Court liberally construes Plaintiff's complaint. It appears that Plaintiff is attempting to state four claims pursuant to 42 U.S.C. § 1983. First, he alleges that an East Peoria Police Officer (unidentified in the Complaint) stopped him without probable cause. Second, he alleges that the same officer searched him or his property without reasonable cause. Third, he alleges that the East Peoria Police Department and three of its officers – Jeffrey Bieber, Patrick Patterson, and Matthew Bolton – racially profiled him. And fourth, he alleges that the named

Defendants engaged in a conspiracy to violate his civil rights. As explained below, Plaintiff has failed to state any claim on which relief can be granted, so the Court must dismiss his Complaint.

I. **Plaintiff's Fourth Amendment Claims**

a. **Illegal Stop**

Plaintiff alleges that the unnamed officer who stopped him did so unreasonably. "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person . . . and thus must be reasonable under the circumstances." *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014). If an officer has "a reasonable, articulable suspicion that criminal activity is afoot," he "may conduct an investigatory stop of a person." *Id.* (quoting *United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007)). In order to have stopped Plaintiff, the officer must have had "a reasonable articulable suspicion that [he] had committed, [was] committing, or [was] about to commit an offense," including a traffic offense. *Id.*

Here, Plaintiff has alleged that an unnamed officer stopped him, and did so without any basis. Plaintiff asserts that he "followed all traffic laws," "did not speed," and "signaled when required." (Doc. 1 at 8). He also denies that he was "all over the ramp," contrary to the arresting officer's statements. (*Id.* at 9). These allegations sufficiently state a claim that the officer unreasonably seized him by pulling him over. *See Huff*, 744 F.3d at 1004.

However, Plaintiff has failed to identify the officer who stopped him. Plaintiffs must tie specific defendants to allegations of unconstitutional conduct. *See, e.g., Abu-Shawish v. United States*, 546 F. App'x 576, 579 (7th Cir. 2013). This

5

is driven by the logic that defendants must be put on notice about what they have done to violate a plaintiff's rights. *See id.* at 579; *Neal v. Cross*, No. CIV 11-1021-GPM, 2012 WL 1119767, at *2 (S.D. Ill. Apr. 3, 2012). Here, where Plaintiff has sued three specific individual officers, but refers only to a generic officer who stopped him, there is a genuine uncertainty as to which officer is responsible for stopping him. *See Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013). In light of this, the Court dismisses Plaintiff's claim that he was unreasonably stopped, but notes that Plaintiff can remedy the issue by identifying the officer who stopped him in an amended complaint.

### b. Illegal Search

Plaintiff has also indicated that the arresting officer unreasonably searched him or his property. Yet the Complaint fails to allege that any of the officers actually engaged in any kind of search of Plaintiff or his property. Therefore, this claim must be dismissed as well.

### c. Abstention

For the reasons explained above, Plaintiff has failed to state a claim that any of the East Peoria police officers named as a defendant violated his Fourth Amendment rights. It is possible, and perhaps even likely, that Plaintiff can remedy these deficiencies in an amended complaint. Should Plaintiff choose to file an amended complaint, however, he should be aware that the Court would abstain from hearing his Fourth Amendment claims.

Under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that seek

to interfere with or interrupt ongoing state proceedings." *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 678 (7th Cir. 2010). In *Younger*, the Supreme Court held that federal courts must abstain "when a criminal defendant seeks a federal injunction to block his state court prosecution on federal constitutional grounds." *Id.* (citing *Younger*, 401 U.S. at 53-54). Subsequently, courts have extended the holding of *Younger* to claims for monetary relief. *See Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013); *Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1995). This is because "a federal damages suit, although not interfering with the state proceeding to the same degree as an injunction, could beat the state action to judgment and either undermine . . . or preclude the State's consideration of some issues." *Majors v. Engelbrecht*, 149 F.3d 709, 714 (7th Cir. 1998)(citations omitted). In situations where plaintiffs seek damages, but the claims for damages could interfere with ongoing state proceedings, district courts must stay the claim until the resolution of the state proceedings. *Gakuba*, 711 F.3d at 753. Courts stay these claims rather than dismiss them because they "may become time-barred by the time the state prosecution has concluded." *Id.*

Here, Plaintiff has indicated that there are ongoing state proceedings related to the three citations he received. (Doc. 1 at 5). Plaintiff's claims that he was unreasonably stopped and searched "involve constitutional issues that may be litigated during the course of his criminal case." *Gakuba*, 711 F.3d at 753. If this court were to decide these issues during the pendency of the state court proceeding, it could undermine those proceedings. *Id.* Therefore, should Plaintiff file an

amended complaint, the Court would stay his Fourth Amendment claims until the conclusion of the state proceedings.

## II. Plaintiff's Fourteenth Amendment Claim

Plaintiff has alleged that East Peoria police racially profiled him by stopping him, and in their subsequent treatment of him. Specifically, he alleges that Officer Bolton (a supervisor with the East Peoria Police Department) permitted East Peoria police officers to continue interrogating him about his involvement in the drug trade at the police station even after "all leads came back (returned) as clear." (Doc. 1 at 3). And he alleges that Officer Patterson racially profiled him later, when he refused to release to Plaintiff certain police surveillance tapes from the evening of his arrest.

"Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011). *See also Whren v. United States*, 517 U.S. 806, 813 (1996). As the Supreme Court explained, "an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns." *Enquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 604 (2008). "To state a *prima facie* equal protection claim, a plaintiff must allege that (1) [h]e is a member of a protected class, (2) [h]e is otherwise similarly situated to members of the unprotected class, and (3) [h]e was treated differently from members of the protected class." *Britt v. Anderson*, 21 F. Supp. 3d 966, 973 (N.D. Ill. 2014)(citing *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005)).

Plaintiff has pleaded that he is Black, so he has properly alleged that he is a member of a protected class. However, he has failed to plead any facts from which an inference can be drawn that he is similarly situated to drivers of other races and that those drivers were treated differently from him. Absent such allegations, Plaintiff's equal protection claim must be dismissed. *See Britt*, 21 F. Supp. 3d at 973 (dismissing equal protection claim where female detainee alleged that a police officer improperly searched and seized her cell phone photographs because she was a woman but failed to allege facts that any similarly situated men were treated differently); *Chriswell v. Vill. of Oak Lawn*, No. 11 C 00547, 2013 WL 5903417, at *11 (N.D. Ill. Nov. 4, 2013) *aff'd sub. nom. Chriswell v. O'Brien*, 570 F. App'x 617 (7th Cir. 2014)(dismissing racial profiling equal protection claim based upon a traffic stop where the plaintiff failed to "name similarly situated individuals of other races who were not stopped by [the] police under similar conditions or offer any statistical evidence that would permit a plausible inference of discriminatory effect."); *Britt v. Peoria County*, No. 11-1034, 2011 WL 1979859, at *2 (C.D. Ill. May 20, 2011)(same); *Battle v. Alderden*, No. 14 C 1785, 2015 WL 1522943, at *4-5 (N.D. Ill. Mar. 30, 2015)(dismissing racial profiling equal protection claim where Black plaintiff pleaded that law enforcement officers targeted him for "discrimination, opprobrium and mistreatment" but failed to "identify any non-African-American person who was treated differently" or offer other facts that "would allow a plausible inference of discriminatory effect.").

Should Plaintiff include a racial profiling claim in an amended complaint, it may be necessary for the Court to stay that claim for the same reasons that it would stay the Fourth Amendment claims. *See supra* at 6-7.

### III. Plaintiff's Conspiracy Claim

Finally, Plaintiff has suggested that the named Defendants conspired to violate his civil rights. (Doc. 1 at 5). "[A] bare allegation of conspiracy [is] not enough to survive a motion to dismiss for failure to state a claim." *Conney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). "To state a claim for § 1983 conspiracy, a plaintiff must allege: '(1) an express or implied agreement among defendants to deprive plaintiff of his or [his] constitutional rights and (2) actual deprivation of those rights in the form of overt acts in furtherance of the agreement.'" *Harshaw v. Sarabia*, No. 09 CV 6723, 2011 WL 196832, at *3 (N.D. Ill. Jan. 19, 2011) (quoting *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)). Plaintiffs must also plead "the parties, general purpose, and approximate date" of the conspiracy. *See Cooney v. Casady*, 652 F. Supp. 2d 948, 957 (N.D. Ill. 2009)(quoting *Hoskins v. Poelstra*, 320 F3d 761, 764 (7th Cir. 2003)). Here, Plaintiff has not pleaded that there was any express or implied agreement to deny him of his constitutional rights, nor has he identified the parties of any such agreement or its approximate date. Therefore, his conspiracy claim must be dismissed.

### IV. East Peoria Police Department

If Plaintiff chooses to file an amended complaint, he may not bring any claims against Defendant East Peoria Police Department, as it is an improper party. In Illinois, police departments do not have a legal existence separate from

their municipalities, and so cannot be sued under § 1983. *Chan v. City of Chicago*, 777 F. Supp. 1437, 1442 (N.D. Ill. 1991); *see also* 65 Ill. Comp. Stat. 5/11-1-1. Because a police department is part of the municipality, any claims stated against the East Peoria Police Department are more properly stated against the City of East Peoria.

If Plaintiff had named the City of East Peoria as a Defendant instead of the East Peoria Police Department, the present allegations would still be lacking. A municipality may not be held vicariously liable for the failings of its employees under § 1983. Rather, a municipality is only liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal policies take three possible forms: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004).

It appears that Plaintiff believes the East Peoria Police Department has a widespread unofficial practice of racially profiling people. "There is no clear consensus as to how frequently [certain conduct] must occur to impose *Monell* liability, except that it must be more than one instance, or even three." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2006) (internal quotation marks omitted)(citations omitted). To properly allege a widespread practice, a

11

plaintiff must plead facts that show either the application of a particular policy to many individuals or show many actions directed at a single individual. *Hare v. Cnty. of Kane*, No. 14 C 1851, 2014 WL 7213198, at *3 (N.D. Ill. Dec. 15, 2015).

The majority of Plaintiff's allegations deal solely with events leading up to, during, and subsequent to his arrest. He has not alleged facts that plausibly suggest that East Peoria police officers have racially profiled any other individuals, or illegally stopped and searched individuals. Rather, all he has alleged is that East Peoria has stopped and arrested 450 Black men in the last year when only 4.7% of East Peorians are African-American. (Doc. 1 at 2). Standing alone – and without allegations that place the arrests in the context of similarly situated people of other races – this allegation cannot plausibly suggest a widespread practice of racial profiling. *See supra* at 8-9.

V.      **Other matters**

As all of Plaintiff's claims are deficient, the Complaint must be dismissed. However, before dismissing the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii), courts must give litigants the opportunity to amend. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1022-25 (7th Cir. 2013). The Court has endeavored to identify the deficiencies in Plaintiff's claims and explain what Plaintiff must do in order to properly allege each of his claims in an amended complaint. *See Tate v. SCR Med. Transp.*, No. 15-1447, 2015 WL 9463188, at *2 (7th Cir. Dec. 28, 2015). In light of this, the Court will also address Plaintiff's two pending motions.

### A. Motion for Leave to Proceed in forma pauperis

Title 28 U.S.C. § 1915 provides that a civil proceeding may proceed without prepayment of the filing fee. "The privilege to proceed without [paying] costs and fees is reserved to the many truly impoverished litigants who, within a district court's discretion, would remain without legal remedy if such privilege were not afforded to them." *Brewster v. North Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972).

At this point, it is unclear to the Court whether Plaintiff should be able to proceed in forma pauperis. The Court can't help but note the incongruity between Plaintiff's Complaint (Doc. 1) and Motion for Leave to Proceed in forma pauperis. (Doc. 2). Plaintiff has alleged that he works as a "cook-partner" at the Sunnyland 1 Stop in East Peoria, and receives his pay based on the profitability of the bar's food business. (Doc. 1 at 7). Yet, in his Motion for Leave to Proceed in forma pauperis, Plaintiff states that he does not have any gross pay or wages and that his only source of income is $753.00 per month in social security benefits. (*Id.* at 1, 2).

Based upon this incongruity, the Court denies Plaintiff's Motion for Leave to Proceed in forma pauperis. This denial is without prejudice. Plaintiff may file a second Motion for Leave to Proceed in forma pauperis. If the Court is mistaken, and Plaintiff in fact receives no wages or income through his employment with Sunnyland 1 Stop, Plaintiff should say so. However, if Plaintiff does receive wages or income through his employment with Sunnyland 1 Stop, Plaintiff should report it so the Court is able to fully assess his ability to pay the filing fee.

### B. Motion to Request Counsel

Plaintiff has also requested that the Court recruit counsel for him. A civil litigant is not entitled to a court-appointed attorney. *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). However, the Court may request an attorney to represent an indigent litigant. 28 U.S.C. § 1915(e)(1). The decision of whether to recruit counsel is generally left to the discretion of the Court. *Wilson v. Duckworth*, 716 F.2d 415, 418 (7th Cir. 1983). The litigant must first show that he made a reasonable attempt to acquire counsel without Court intervention. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). If the litigant has made the proper attempt, the Court considers whether, "given the difficulty of the case," he appears able to litigate it himself, and, if not, whether appointed counsel would be "reasonably likely to alter the outcome." *Id.* at 655-56, 660.

Here, Plaintiff has not shown that he made a reasonable attempt to acquire counsel without the Court's intervention. *See id.* at 654. For that reason his Motion to Request Counsel (Doc. 3) is denied.

### Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Motion for Leave to Proceed in Forma Pauperis (Doc. 2) and Motion to Appoint Counsel (Doc. 3) are DENIED. On merit review pursuant to 28 U.S.C. § 1915(e)(2), Plaintiff's complaint is DISMISSED. Plaintiff MAY file an Amended Complaint within twenty-eight (28) days. If he fails to do so, the case will be dismissed.

Entered this 19th day of January, 2016.

                                                s/Joe B. McDade  
                                               JOE BILLY McDADE  
                                United States Senior District Judge