**E-FILED**
Friday, 08 April, 2016  04:24:31 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| LEON J. SINGLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  15-cv-1503 |
| | ) | |
| CITY OF EAST PEORIA, JEFFREY A. | ) | |
| BIEBER, MATTHEW BOLTON, and | ) | |
| PATRICK PATTERSON | ) | |
| | ) | |
| Defendants. | ) | |

# O R D E R   &   O P I N I O N

Plaintiff Leon J. Singleton has filed a Second Amended Complaint against the East Peoria Police Department and three of its officers based on a traffic stop that occurred in late fall of 2015. He alleges that Defendants violated his civil rights in violation of 42 U.S.C. § 1983. His previous two complaints (Docs. 1 and 5) were dismissed pursuant to 28 U.S.C. § 1915.

This matter is currently before the Court on Plaintiff's Motion for Leave to Proceed in forma pauperis (Doc. 11) and Motion to Request Counsel (Doc. 10). Plaintiff may proceed in forma pauperis, but the Court will not recruit counsel at this time. In considering Plaintiff's motion to proceed in forma pauperis, the Court has screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915. Some of Plaintiff's claims are sufficiently pleaded, but others must be dismissed. As the surviving claims could interfere with state charges that are currently pending against Plaintiff, this matter must be stayed until those proceedings reach a resolution.

## FACTUAL BACKGROUND

Plaintiff Leon Singleton is a fifty-four year old Black man. (Doc. 9 at 4). In the fall of 2015, he worked as a "cook-partner" in the kitchen at the Sunnyland 1 Stop bar in East Peoria, Illinois. (*Id.*). On October 31, 2015, he was working, and the bar was open late and hosting a band. (*Id.* at 5).  When he took a cigarette break at around 11 or 11:30 p.m., he noticed that Defendant Patrick Patterson's police car was parked at the entrance of the band's parking lot.   (*Id.* at 5, 10). Patterson, an East Peoria police officer, had been "sitting" in the lot for an extended period of time that evening. (*Id.* at 10). The customers noticed, too: people coming outside to smoke began to leave and new customers stopped coming inside. (*Id.* at 5).

With business declining, Plaintiff and the bartender decided to stop the band around midnight. (*Id.*). Plaintiff moved his car, a 2000 Jaguar, so the band could load up its equipment more easily and leave. (*Id.* at 5, 7). Defendant Patterson left the parking lot just before the band left. (*Id.* at 5). However, he told Defendant Jeffrey Bieber, another East Peoria police officer, to "keep an eye" on Plaintiff's car, which he said was "suspicious." (*Id.* at 5, 10).

Plaintiff left the bar by car shortly after the band left, and began to return home to his apartment in Peoria. (*Id.* at 5). When he was three blocks into his drive, Defendant Bieber began following him in a police car. (*Id.*). Bieber continued to follow him as he drove toward East Peoria, got onto westbound Interstate 74, and then exited the interstate to take the fly-over ramp toward downtown Peoria, Illinois. (*Id.*).

As Plaintiff was exiting the fly-over ramp, Bieber activated his lights and pulled him over. (*Id.*). Plaintiff insists that there was no reason for Bieber to pull him over. He had been following all traffic laws, was not speeding, and signaled when required. (*Id.*). Bieber, however, told Plaintiff that he was "all over the ramp." (*Id.* at 6).

After pulling Plaintiff over, Bieber took his license and registration, and later asked him to step out of the car. (*Id.*). Bieber "patted [Plaintiff] down," and administered a breathalyzer test, which indicated that Plaintiff's blood alcohol content was below .08 percent. Defendant then began to give Plaintiff a battery of field sobriety tests. (*Id.*). When Plaintiff told Bieber that he could not "walk a line" because of a bad right knee and medications he had taken, Bieber placed him under arrest for driving under the influence. (*Id.*).

Other police officers arrived on the scene after Bieber pulled Plaintiff over, including Defendant Patterson. While Bieber was searching Plaintiff and administering field sobriety tests, Defendants Patterson and two other police officers searched his car and the trunk of his car. Before searching the trunk, Patterson said, "I hope there is something in here we can get him on." (*Id.*). The officers found a "cup . . . from home" in the car that "had a small amount of alcohol in it." (*Id.* at 7).

Officer Bieber took Plaintiff to a police station in East Peoria, where he questioned him repeatedly about "guys named Kevin or Brandon" and whether he knew "anything about drug activity at Sunnyland 1 Stop." (*Id.* at 6). During this interrogation, Plaintiff told Bieber that he believed he had been racially profiled.

3

(*Id.* at 6-7).   Bieber and Patterson laughed off this accusation. (*Id.*). Bieber then proceeded to issue Plaintiff with three citations: one for driving under the influence, one for improper lane usage, and one for illegal transportation of alcohol. (*Id.* at 7). Plaintiff was then released. (*Id.*). He picked up his impounded car the following day. (*Id.*). The citations remain pending.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(a)(1), "any court of the United States may authorize the commencement . . . of any suit, action or proceeding . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets . . . ." The same section instructs that courts "shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." *Id.* § 1915(e)(2)(B)(ii).

Dismissals pursuant to § 1915(e)(2)(B)(ii) are treated in the same manner as dismissals under Federal Rule of Civil Procedure 12(b)(6). *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Therefore, the court must take "all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff." *Id.*

A plaintiff's complaint must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts "to present a story that holds together," but does not require a determination of

probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. Pro se complaints are to be liberally construed and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007)(per curiam).

## DISCUSSION

As it must, the Court liberally construes Plaintiff's complaint. Plaintiff is attempting to state five claims pursuant to 42 U.S.C. § 1983. First, he claims that Defendant Bieber stopped him without probable cause. Second, he claims that Defendant Bieber unreasonably searched him. Third, he claims that Defendant Patterson unreasonably searched his car. Fourth, he claims that Defendant Bieber racially profiled him, and that the East Peoria police department has engaged in a pattern and practice of racial profiling. Fifth, he alleges that Defendants Bieber, Patterson, and Michael Bolton engaged in a conspiracy to violate his civil rights. Plaintiff has stated a claim that Defendants Bieber violated his rights under the Fourth Amendment by unreasonably stopping him and patting him down, and that Defendant Patterson violated his rights under the Fourth Amendment by unreasonably searching his car. But he has failed to state any other claim on which relief can be granted.

I.      **Plaintiff's Fourth Amendment Claims**

a.  **Illegal Stop**

Plaintiff alleges that Defendant Bieber unreasonably stopped him. "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person . . . and thus must be reasonable under the circumstances." *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014). If an officer has "a reasonable, articulable suspicion that criminal activity is afoot," he "may conduct an investigatory stop of a person." *Id.* (quoting *United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007)). In order to have stopped Plaintiff, the officer must have had "a reasonable articulable suspicion that [he] had committed, [was] committing, or [was] about to commit an offense," including a traffic offense. *Id.*

Here, Plaintiff has alleged that Defendant Bieber stopped him without any basis. Plaintiff asserts that he "followed all traffic laws," "did not speed," and "signaled when required." (Doc. 9 at 5). He also denies that he was "all over the bridge," contrary to the arresting officer's statements. (*Id.* at 6). These allegations sufficiently state a claim that the officer unreasonably seized him by pulling him over. *See Huff*, 744 F.3d at 1004.

b.  **Illegal Searches**

i.  **Search of Plaintiff**

Plaintiff also claims that Bieber subjected him to an unreasonable search when he patted him down and then required that he perform a number of field sobriety tests.

6

Plaintiff has stated a claim that Bieber violated the Fourth Amendment by frisking him prior to administering the sobriety tests. "In the context of a traffic stop, an officer may conduct a pat-down search when two conditions are met." *Huff*, 744 F.3d at 1009. "First, the investigatory stop must be lawful." *Id.* (quoting *Arizona v. Johnson*, 555 U.S. 323, 326 (2009)). Second, the officer "must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Id.* (quoting *Johnson*, 555 U.S. at 327). Here, as Plaintiff has stated a claim that he was unlawfully stopped, his claim that he was unreasonably searched is also sufficient. *See id.* Moreover, nothing in the Second Amended Complaint suggests facts that would support a reasonable suspicion that Plaintiff was armed and dangerous. *See id.*

However, Plaintiff has not stated a claim that Bieber violated the Fourth Amendment by subjecting him to field sobriety tests. "The same standard of reasonable suspicion applies when an officer requires a driver to perform field sobriety tests." *Bernardi v. Klein*, 682 F. Supp. 2d 894, 902 (W.D. Wis. 2010). So, officers may administer field sobriety tests if they have a reasonable, articulable suspicion that a motorist is intoxicated. *See Yachnin v. Vill. of Libertyville*, 803 F. Supp. 2d 844, 856 (N.D. Ill. 2011); *People v. Bruni*, 940 N.E.2d 84, 87-88 (Ill. App. Ct. 2010); 5 W. LaFave, Search & Seizure § 10.8(d) (5th ed.) ("Because the performance of a couple of quick, simple physical coordination tests is not particularly onerous, offensive or restrictive, they may be constitutionally required upon a reasonable suspicion.") (quotation marks omitted).

Here, no allegations suggest or imply that Defendant Bieber lacked reasonable suspicion at the time that he administered the battery of field sobriety tests that Plaintiff was intoxicated. Instead, Plaintiff reiterates his complaint that Defendant Bieber never should have stopped him in the first place. (Doc. 9 at 6).

Plaintiff's argument seems like a variant on the "fruit of the poisonous tree" concept. In criminal law, "[e]vidence seized as a result of an illegal stop is the fruit of the poisonous tree and should not be introduced into evidence." *E.g., United States v. Wilbourn*, 799 F.3d 900, 910 (7th Cir. 2015). So, if Plaintiff is correct in his belief that Defendant Bieber unlawfully stopped him, that could be a ground for challenging the introduction of evidence of the sobriety tests in his pending state criminal case. *Id.*

The doctrine of the fruit of the poisonous tree is not applicable to civil rights lawsuits brought pursuant to § 1983, though. *See Ryan v. Koester*, 78 F. Supp. 3d 935, 940 (C.D. Ill. 2015); *Townes v. City of New York*, 176 F.3d 138, 145-46 (2d Cir. 1999); *Cannon v. Christopher*, 06-CV-267, 2007 WL 2609893, at *3-5 (N.D. Ind. Sept. 6, 2007) (collecting cases). In *Townes*, police illegally searched the plaintiff, and arrested him after discovering that he possessed handguns. The Second Circuit held that despite the illegal stop and search, the plaintiff could not state a claim for false arrest because the police "certainly had probable cause to arrest him upon discovery of the handguns." *Townes*, 176 F.3d at 149. In other words, regardless of whether the handguns would be admissible in a criminal proceeding, "the lack of probable cause to stop and search does not vitiate the probable cause to arrest." *Id.*

Even if Defendant Bieber unlawfully stopped Plaintiff, that unlawful stop does not invalidate all subsequent actions that Bieber then took. *See id.* To state a claim, Plaintiff must allege some facts that make it plausible that Bieber did not have a reasonable suspicion when he subjected Plaintiff to sobriety tests. He has not done that, so this claim must be dismissed.

### ii.   Search of Plaintiff's Car

Plaintiff also alleges that Defendant Patterson unlawfully searched his car, along with Officers Middleton and Hutton. (Doc. 9 at 6). This search occurred while Bieber was administering the sobriety tests, and included a search of the car's trunk. (*Id.*).

Ordinarily police must have a warrant to search an automobile, but there are three common exceptions to that rule. First, police officers may search an automobile without a warrant when they have probable cause to believe that it contains evidence of a crime. *E.g., United States v. Thompson*, 561 F. Supp. 2d 938, 966 (N.D. Ill. 2008). Second, they may search the passenger compartment of a car subsequent to a person's arrest when the arrestee "is unsecured and within reaching distance of the passenger compartment at the time of the search," or "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (internal quotation marks omitted). And third, they may conduct a post-arrest warrantless inventory search: "Searches conducted by the police prior to towing a car are lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property – and protecting the police from the owner's charging them with having

9

stolen, lost, or damaged his property." *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (internal quotation marks omitted).

The allegations in Plaintiff's complaint are sufficient to state a claim that Defendant Patterson violated his Fourth Amendment right by searching his car. Based on the facts as pleaded, the second two exceptions to the warrant requirement do not apply because the car search occurred prior to Plaintiff's arrest. Drawing inferences in favor of Plaintiff, the first exception would not apply either. Even if Defendant Bieber had probable cause to believe that Plaintiff was under the influence of alcohol – a premise that Plaintiff disputes – that may not provide probable cause to believe that evidence of the crime could be found in the car. *See Thompson*, 561 F. Supp. 2d at 967. And supposing that Defendant Bieber had probable cause to believe that Plaintiff had committed a traffic violation – a premise that Plaintiff also disputes – what evidence of such a violation could exist inside Plaintiff's car?

### c.  Abstention

Although Plaintiff has sufficiently stated these Fourth Amendment claims, the Court must abstain from hearing them at this time.

Under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings." *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 678 (7th Cir. 2010). In *Younger*, the Supreme Court held that federal courts must abstain "when a criminal defendant seeks a federal injunction to block his state court prosecution on federal constitutional grounds." *Id.* (citing

*Younger*, 401 U.S. at 53-54). Subsequently, courts have extended the holding of *Younger* to claims for monetary relief. *See Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013); *Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1995). This is because "a federal damages suit, although not interfering with the state proceeding to the same degree as an injunction, could beat the state action to judgment and either undermine . . . or preclude the State's consideration of some issues." *Majors v. Engelbrecht*, 149 F.3d 709, 714 (7th Cir. 1998) (citations omitted). In situations where plaintiffs seek damages, but the claims for damages could interfere with ongoing state proceedings, district courts must stay the claim until the resolution of the state proceedings. *Gakuba*, 711 F.3d at 753. Courts stay these claims rather than dismiss them because they "may become time-barred by the time the state prosecution has concluded." *Id.*

Here, Plaintiff has indicated that there are ongoing state proceedings related to the three citations he received. (*See* Doc. 9 at 7; Doc. 10 at 2 ("Attorney Asbury is Counsel for the DUI case, currently pending.")). Plaintiff's claims that he was unreasonably stopped and searched "involve constitutional issues that may be litigated during the course of his criminal case." *Gakuba*, 711 F.3d at 753. If this court were to decide these issues during the pendency of the state court proceeding, in which Plaintiff could well raise them as defenses, it could undermine those proceedings. *Id.* Therefore, Plaintiff's Fourth Amendment claims must be stayed until the conclusion of the state proceedings. *See id.*

## II.    Plaintiff's Fourteenth Amendment Claims

### a.  Defendant Bieber

Plaintiff claims that Defendant Bieber racially profiled him by unlawfully stopping him. (*See* Doc. 9 at 6, 9). This claim must be dismissed, as Plaintiff's complaint does not include any plausible allegation that Bieber knew of Plaintiff's race when he initiated the stop.

"Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011); *see also Whren v. United States*, 517 U.S. 806, 813 (1996). As the Supreme Court explained, "an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns." *Enquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 604 (2008).

"To state a *prima facie* equal protection claim, a plaintiff must allege that (1) [h]e is a member of a protected class, (2) [h]e is otherwise similarly situated to members of the unprotected class, and (3) [h]e was treated differently from members of the protected class." *Britt v. Anderson*, 21 F. Supp. 3d 966, 973 (N.D. Ill. 2014) (citing *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005)).[1]

---

[1]    Many courts that have considered racial profiling claims based upon traffic stops have relied upon the Seventh Circuit's opinion in *Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001), and  required that a plaintiff allege facts that show the challenged actions had a discriminatory effect and were motivated by a discriminatory purpose. *See e.g., Chriswell v. Vill. of Oak Lawn*, No. 11 C 00547, 2013 WL 5903417, at *11 (N.D. Ill. Nov. 4, 2013);  *Britt v. Peoria Cty.*, No. 11-1034, 2011 WL 1979859, at *1-2 (C.D. Ill. May 20, 2011). *Chavez* explained that plaintiffs can prove discriminatory effect by showing that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected

In the barest of ways, Plaintiff has pleaded facts that meet this prima facie test. He has pleaded that he is Black, so he has properly alleged that he is a member of a protected class. And he has pleaded that police officers in East Peoria pull over Black drivers with considerable more frequency than white drivers, if one considers the general "driver's base" of East Peoria.   (Doc. 9 at 9). Although Plaintiff's allegations regarding his – and other Black drivers' – disparate treatment from white drivers in East Peoria are thinly pleaded, they are sufficient at this stage of litigation. *Compare Smith v. City of Chicago*, No. 15 C 3467, 2015 WL 6859299, at *7 (N.D. Ill. Nov. 9, 2015) (holding that plaintiffs who relied upon datasets that show African Americans and Latinos in Chicago were more likely to be stopped and frisked than white counterparts stated a claim under the Equal Protection Clause) *with Britt*, 2011 WL 1979859, at *2  (dismissing racial profiling claim when plaintiff failed to either name similarly situated individuals who were not stopped and searched under similar conditions or "utilize any statistics to support this conclusion.").

---

class, and that they were treated differently from those members of the unprotected class. 251 F.3d at 635-36. Plaintiffs can show that defendants were motivated by a discriminatory purpose by presenting evidence that the defendant "selected or reaffirmed a particular course of action at least in part because of . . . its adverse effects upon an identifiable group." *Id.* (internal quotation marks omitted).

Cases decided by the Seventh Circuit after *Chavez*, however, have clarified that "proof of discriminatory intent [or purpose]" as articulated in *Chavez* is not a "freestanding element . . . necessary to establish a prima facie equal protection violation." *Salas v. Wisc. Dep't of Corr.*, 493 F.3d 913, 926, n. 13 (7th Cir. 2007); *see also Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003). Instead, those cases concluded that proof of discriminatory intent" is "best read as simply emphasizing the requirement that § 1983 [Equal Protection Clause] cases require ultimately proof of discriminatory intent." *Williams*, 343 F.3d at 788.

The Second Amended Complaint, however, suffers from a fundamental defect: no pleaded facts allow for an inference that Defendant Bieber was aware of Plaintiff's race when he initiated the traffic stop.  Ultimately, Plaintiff must prove that Bieber pulled him over *because* of his race. *See Chavez*, 251 F.3d at 635-36; *Salas*, 493 F.3d at 926, n. 13. And alleging a discrimination case through the use of similarly situated comparators relies upon the assumption that a defendant was aware of a plaintiff's race when treating him in an adverse way. *See United States v. Parada*, 289 F. Supp. 2d 1291, 1305 (D. Kan. 2003) ("But, allegations of racial profiling or selective enforcement begin with an officer's observation of a motorist's appearance."); *Mitchell v. Fuentes*, No. CIV 12-3394 FLW, 2013 WL 2253585, at *6 (D.N.J. May 22, 2013) (allowing a racial profiling claim to proceed where the plaintiff alleged that the defendants had "racially profiled him because they *observed* he was an African American driving a nice sports car with a white female passenger and, based on this, stopped him."). Plaintiff has not pleaded that Defendant Bieber was aware of his race when he stopped him. In fact, the allegations of Plaintiff's Second Amended Complaint seem to suggest otherwise: Plaintiff has pleaded that Bieber followed him not because of his race but instead because he was told to keep his eye on a suspicious vehicle. (Doc. 9 at 5, 10). Without an allegation that ties his race to Defendant Bieber's decision to pull him over, Plaintiff cannot state a plausible equal protection claim. *See Enquist*, 553 U.S. at 604; *Parada*, 289 F. Supp. 2d at 1305.

### b. East Peoria

Plaintiff has also sued the City of East Peoria, Illinois, and alleges its employees have long racially profiled Black drivers. A municipality may not be held vicariously liable for the failings of its employees under § 1983. Rather, a municipality is only liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal policies can take three possible forms, including "a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law. . . ." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). "There is no clear consensus as to how frequently [certain conduct] must occur to impose *Monell* liability, except that it must be more than one instance, or even three." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2006) (internal citations and quotation marks omitted). To properly allege a widespread practice, a plaintiff must plead facts that show either the application of a particular policy to many individuals or show many actions directed at a single individual. *Hare v. Cnty. of Kane*, No. 14 C 1851, 2014 WL 7213198, at *3 (N.D. Ill. Dec. 15, 2015).

Here, Plaintiff has alleged facts suggesting that a large number of Black drivers in East Peoria have been racially profiled by the police. *See id.* But, as discussed above, Plaintiff has not adequately alleged that he was pulled over because of his race.  As such, he has not alleged that East Peoria's unofficial

practice injured him, and the City of East Peoria must be dismissed. *See Monell*, 436 U.S. at 694.

### III.   Plaintiff's Conspiracy Claim

Finally, Plaintiff has suggested that Defendants Bieber, Patterson, and Bolton conspired to violate his civil rights. (Doc. 9 at 10). "[A] bare allegation of conspiracy [is] not enough to survive a motion to dismiss for failure to state a claim." *Conney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). "To state a claim for § 1983 conspiracy, a plaintiff must allege: '(1) an express or implied agreement among defendants to deprive plaintiff of his or [his] constitutional rights and (2) actual deprivation of those rights in the form of overt acts in furtherance of the agreement.'" *Harshaw v. Sarabia*, No. 09 CV 6723, 2011 WL 196832, at *3 (N.D. Ill. Jan. 19, 2011) (quoting *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)). Plaintiffs must also plead "the parties, general purpose, and approximate date" of the conspiracy. *See Cooney v. Casady*, 652 F. Supp. 2d 948, 957 (N.D. Ill. 2009) (quoting *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003)).

Here, Plaintiff has pleaded that Defendants Patterson and Bieber conspired to violate his rights when Patterson left the Sunnyland 1 Stop and asked Bieber to "sit" on Plaintiff's car. (Doc. 9 at 19). He alleges that Patterson's subsequent comment during the automobile search – in which he said "I hope we find something" before searching the car's trunk – is indicative of both his role in the conspiracy and his attitude toward Plaintiff. (*Id.*).

These allegations do not support a conspiracy claim. First, Plaintiff has not sufficiently pleaded that he was deprived of his rights under the Equal Protection

Clause of the Fourteenth Amendment, so any conspiracy claim based upon that must be dismissed. *See Harshaw*, 2011 WL 196832, at *3. Second, his allegations of an agreement are insufficient. *See id.* Patterson and Bieber's agreement that Bieber would "sit" on Plaintiff's car is not indicative of an implied agreement to deprive Plaintiff of any constitutional rights at all. The Court cannot plausibly infer from this comment that Bieber and Patterson agreed that Bieber would illegally stop Plaintiff, nor can it plausibly infer from the comment that Patterson put Bieber on notice of Plaintiff's race and the two of them agreed that Bieber would single Plaintiff out for a traffic stop because of it. Plaintiff's allegations of an agreement to deprive him of his rights are speculative, so the conspiracy claim must be dismissed. *See Roehl v. Merrilees*, No. 11 C 4886, 2012 WL 1192093, at *8 (N.D. Ill. April 10, 2012) (dismissing conspiracy claim when plaintiff alleged "the parties, purpose and date of the conspiracy, but fail[ed] to allege facts or circumstances upon which either an express or implied agreement . . . could be inferred above the speculative level.").

### MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

Title 28 U.S.C. § 1915 provides that a civil proceeding may proceed without prepayment of the filing fee. "The privilege to proceed without [paying] costs and fees is reserved to the many truly impoverished litigants who, within a district court's discretion, would remain without legal remedy if such privilege were not afforded to them." *Brewster v. North Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972). Here, Plaintiff has declared that he has no savings, no assets other than his automobile (which he values at "less than $2,000"), and that he is unemployed.

(Doc. 2 at 1, 4). He receives social security and disability payments of $753 per month, which he spends on household necessities. (Doc. 11 at 2). He did not receive any income from hims employment with the Sunnlyand 1 Stop. (*Id.* at 1). In light of this, the Court concludes that Plaintiff cannot afford the filing fee and grants his motion for leave to proceed in forma pauperis.

### MOTION TO REQUEST COUNSEL

Plaintiff has also requested that the Court recruit counsel for him. (Doc. 10). A civil litigant is not entitled to a court-appointed attorney. *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). However, the Court may request an attorney to represent an indigent litigant. 28 U.S.C. § 1915(e)(1). The decision of whether to recruit counsel is generally left to the discretion of the Court. *Wilson v. Duckworth*, 716 F.2d 415, 418 (7th Cir. 1983). The litigant must first show that he made a reasonable attempt to acquire counsel without Court intervention. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). If the litigant has made the proper attempt, the Court considers whether, "given the difficulty of the case," he appears able to litigate it himself, and, if not, whether appointed counsel would be "reasonably likely to alter the outcome." *Id*. at 655-56, 660.

Here, Plaintiff has shown that he made a reasonable attempt to acquire counsel without the Court's intervention, as he unsuccessfully reached out to four different attorneys. *See id*. at 654; (Doc. 10). However, in its discretion, the Court declines to recruit counsel at this time. Plaintiff's surviving claims are relatively simple, and he has shown through his submissions to the Court that he can capably present arguments and gather information. Additionally it is difficult at this time to

determine whether appointed counsel would be "reasonably likely to alter the outcome" of the case. *Id.* at 655-56, 660. Plaintiff's remaining claims are stayed until the state proceedings have resolved. The manner in which the state court resolves the state proceedings against Plaintiff may well affect the viability of Plaintiff's remaining claims. So, Plaintiff's Motion to Request Counsel (Doc. 10) is denied without prejudice. Plaintiff may renew his request after the stay has been lifted.

CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Leave to Proceed in forma pauperis (Doc. 11) is GRANTED and his Motion to Request Counsel is DENIED.

Plaintiff has stated a claim that Defendant Bieber violated his Fourth Amendment rights by illegally stopping him and frisking him. Plaintiff has also stated a claim that Defendant Patterson violated his Fourth Amendment rights by illegally searching his car. ALL OTHER CLAIMS AND DEFENDANTS ARE DISMISSED.  Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

Plaintiff's surviving claims are STAYED until the resolution of the state action that is currently pending against him. Plaintiff is directed to file a status report within 90 days or upon the conclusion of the state proceedings, whichever comes first.

Entered this 8th day of April, 2016.

s/Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
